UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ANDRE JOHNSON (#375946) | CIVIL ACTION |
| VERSUS | |
| MARCUS JONES | 19-896-BAJ-RLB |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 29, 2021.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANDRE JOHNSON (#375946)                   CIVIL ACTION

VERSUS

                                                            19-896-BAJ-RLB

MARCUS JONES

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Motion to Dismiss filed on behalf of defendant Marcus Jones (R. Doc. 38). The motion is not opposed.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated due to retaliation by the defendant Jones.[1] He prays for monetary and declaratory relief.

Defendant Jones first seeks dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's § 1983 claims against him in his official capacity. In this regard, the defendant is correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's §

---

[1] Although other prison personnel are identified throughout the allegations, only defendant Jones is made a defendant.

1983 claims asserted against the defendant in his official capacity for monetary damages are subject to dismissal.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, the defendant next asserts, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. (citation omitted). Notwithstanding, the court need not accept

"a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

Defendant further asserts that he is entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that the defendant's motion should be granted. The plaintiff's allegations, accepted as true, fail to state a claim upon which relief may be granted.

It is prohibited for prison officials to take action against an inmate in retaliation for the inmate's exercise of his constitutional rights. *See Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris v Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that

occurs within a penal institution. *Woods v. Smith, supra*, 60 F.3d at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is causation, *i.e.*, that "but for" the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell, supra*, 449 F.3d at 684. *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). An inmate must allege more than his mere personal belief that he is the victim of retaliation, *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997), and inasmuch as claims of retaliation are not favored, it is the plaintiff's burden to provide more than conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred. This places a significant burden on the inmate.... The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

*Woods v. Smith, supra*, 60 F.3d. at 1166.

In his first Amended Complaint (R. Doc. 4), the plaintiff alleged that on November 19, 2018 he engaged in protected speech on the part of a white EMT who was being subjected to racial remarks while having urine and feces thrown on him. The plaintiff's remarks in favor of the EMT angered Nicholas Sanders. Sanders stood in front of the plaintiff's cell, waved his fists in the air, and made obscene remarks before punching the plaintiff in his chest through the cell bars. Defendant Jones then sprayed the plaintiff with a chemical agent while the plaintiff was in his cell. Shortly after a cell entry team was called and plaintiff was pulled out of his top bunk causing him to fall headfirst on the concrete floor. While on the floor, the plaintiff was beaten by Nicholas Sanders and other members of the cell entry team.

On the same date, defendant Jones filed a false disciplinary report against the plaintiff and also falsely claimed that the plaintiff was allowed to shower and was issued a clean jumpsuit. Since the plaintiff was not allowed to wash away the chemical agent, he was temporarily blind in his left eye for four months and the sight in both eyes remains blurry. The actions of defendant Jones are part of a pattern of false disciplinary actions taken against the plaintiff in retaliation on behalf of defendant Sanders and numerous other officers because the plaintiff threatened to inform the FBI of false write ups, drugs and cell phones being sold by security, and young female officers being forced to transport contraband and perform sexual favors.

In evaluating the defendant's first Motion to Dismiss (R. Doc. 21), the Court found that the plaintiff's first Amended Complaint (R. Doc. 4) failed to allege direct evidence of motivation or a chronology of events from which retaliation may be plausibly inferred. The Court noted,

> "The plaintiff alleges that, on an unspecified date, he stated to an unspecified person that he was going to inform the FBI of certain misconduct by unspecified correctional officers at LSP. The plaintiff further alleges that a campaign of retaliatory actions against him began on October 21, 2018 and culminated on August 31, 2019 when correctional officers attempted to kill the plaintiff. The actions of defendant Jones on November 19, 2018 are alleged to be part of this campaign of retaliatory acts. Without any specific information regarding the plaintiff's alleged statement that he would inform the FBI of misconduct by correctional officers, the Court cannot say that the plaintiff has alleged a chronology of events from which retaliation may plausibly be inferred." *See* R. doc. 32.

The plaintiff was given an opportunity to amend his Complaint to include details concerning the date the plaintiff made the alleged statement, to whom he made the statement, about whom the statement was regarding, and how the alleged statement relates to defendant Jones. *See* R. Docs. 32 and 34. On February 23, 2021, the plaintiff filed a Motion for Extension of Time. Therein the plaintiff asserted that the prison would not provide him with information as to the date and time he met with Special Agent John M. Rothleutner. *See* R. Doc. 35. The Court

granted the plaintiff an extension of time and noted in the Order, "the plaintiff may, in his amended complaint, set forth the information ordered by the Court to the best of his knowledge, information and belief, including any actual meeting with Special Agent Rothleutner." *See* R. Doc. 36.

On March 24, 2021 the plaintiff filed his second Amended Complaint. Therein the plaintiff alleges that before and after his meeting with Special Agent John M. Rothleutner he was beaten and sprayed with a chemical agent 12 times. Due to the 12 incidents the plaintiff has pain, high blood pressure, and memory loss. Therefore, the plaintiff requested that the Court contact Agent Rothleutner for an "undisputed date and time." *See* R. Doc. 37.

Due to the plaintiff's failure to amend his Complaint as ordered, defendant Jones filed the instant Motion to Dismiss (R. Doc. 38). The plaintiff has again failed to plead facts regarding direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. Even if the plaintiff could not remember when he met with Agent Rothleutner, he made no attempt to amend his complaint to include details regarding his alleged statement to Agent Rothleutner or how the alleged statement relates to defendant Jones. All that is left are complaints about the disciplinary procedures, how they were initiated and handled, and the resolutions that were reached. Those are not constitutional concerns. As such, the defendant's Motion to Dismiss should be granted.

## RECOMMENDATION

It is recommended that the defendant's Motion to Dismiss (R. Doc. 38) be granted, dismissing the plaintiff's claims with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on November 16, 2020.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE